O

# United States District Court
# Central District of California

| | |
|---|---|
| KEVIN T. KNOX, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>YINGLI GREEN ENERGY HOLDING COMPANY LIMITED; LIANSHENG MIAO; YIYU WANG,<br><br>        Defendants. | Case № 2:15-cv-04003-ODW(MRWx)<br>[c/w: 2:15-cv-04600-ODW (MRWx)]<br><br>**ORDER CONSOLIDATING ACTIONS, APPOINTING LEAD PLAINTIFFS, AND APPOINTING CLASS COUNSEL [9, 16, 17]** |
| BHIMSAIN MANGLA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>YINGLI GREEN ENERGY HOLDING COMPANY LIMITED; LIANSHENG MIAO; YIYU WANG,<br><br>       Defendants. | |

## I. INTRODUCTION

This is a putative class action for securities fraud under Sections 10(b) and

```
```

20(a) of the Securities Exchange Act. Pending before the Court are multiple Motions to Consolidate and competing Motions for Appointment of Lead Plaintiff and Class Counsel. For the reasons discussed below, the Court **GRANTS** the Motions to Consolidate, **GRANTS** Movants Noe and Salvador Barocio's Motion for Appointment of Lead Plaintiff and Class Counsel, and **DENIES** all other Motions for Appointment of Lead Plaintiff and Class Counsel.[1] (ECF Nos. 9, 16, 17.)

## II. FACTUAL BACKGROUND

Defendant Yingli Green Energy Holding Company Limited ("Yingli") is a publicly-traded company that manufactures and sells solar energy products in the People's Republic of China. (Compl. ¶¶ 2, 18.) Between March 18, 2014 and March 2015, Yingli issued five financial reports that allegedly contained false and misleading statements and omitted material information, including: (1) that Yingli was inappropriately recognizing revenue, (2) that Yingli had no reasonable prospects of collecting on certain accounts receivable based on past customer conduct, and (3) that Yingli was no longer able to borrow from commercial banks to fund its operations, which threatened Yingli's ability to continue to conduct business. (*Id.* ¶ 26.)

On May 15, 2015, Yingli issued a report admitting that there was "substantial doubt as to [its] ability to continue" business operations, citing significant net losses over several years and its inability to repay its "substantial" debts. (*Id.* ¶ 27.) Yingli warned that it may have to liquidate its assets, and that the liquidated value of those assets would be "significantly lower than the values reflected in our audited consolidated financial statements." (*Id.*) On May 18, 2015, the value of Yingli's shares declined 12%. The next day, it declined a further 36%. (*Id.* ¶¶ 28–30.)

On May 28, 2015, Plaintiff Kevin Knox filed this action. (ECF No. 1.) That same day, Plaintiff published notice of this lawsuit as required by 15 U.S.C. § 78u-

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); L.R. 7-15.

4(a)(3)(A). (Barocios Mot. Ex. 1, ECF No. 11-1.) On July 27, 2015, Noe and Salvador Barocio moved to consolidate this action with another putative class action arising out of the same alleged misconduct, and for an order appointing the Barocios as lead plaintiffs and their counsel as class counsel. (ECF No. 9.) Nicolas Erodiades, Mario Santavicca, Xingwang Cui and Yali Zhang, and Todd Morgan also move for consolidation, and have each filed competing motions to be appointed as lead plaintiff and their counsel as class counsel. (ECF Nos. 12, 13, 16, 17.) Santavicca, Cui and Zhang, and Morgan have since withdrawn their motions.[2] (ECF Nos. 35, 38, 46.) The Barocios and Erodiades each filed timely oppositions and replies to the various competing motions. (ECF Nos. 36, 37, 39, 41.) The motions of the Barocios and Erodiades are the only ones still before the Court for consideration.

### III. DISCUSSION

**A. Motion to Consolidate**

All movants seek to consolidate this action with *Mangla v. Yingli Green Energy Holding Co. Ltd.*, No. 2:15-cv-04600-ODW. A district court has broad discretion to consolidate cases that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2); *Inv'rs Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.,* 877 F.2d 777, 777 (9th Cir. 1989). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989). Consolidation of private securities fraud class actions arising from the same alleged misconduct is generally appropriate. *See, e.g.*, *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 806 (N.D. Ohio 1999); *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010); *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *3 (N.D. Cal. July 2,

---

[2] Santavicca concedes in his Notice of Non-Opposition to the competing motions that the Barocios should be appointed as lead plaintiffs. (ECF No. 38.) The Court construes this as a withdrawal of his own request to be appointed as lead plaintiff.

2013).

None of the parties oppose consolidating *Mangla* with this action. *Mangla* arises out of the exact same allegations of fraudulent conduct against Yingli, and encompasses an identical class period. (Compl. ¶¶ 18–30, *Mangla*, No. 2:15-cv-04600-ODW, ECF No. 1.) Thus, the actions clearly involve common questions of law and fact. Consolidation would not cause delay or prejudice given that *Mangla* was filed only a few weeks after this action was filed. It would also avoid potentially inconsistent rulings. Consolidation is therefore appropriate.

**B.     Motions for Appointment of Lead Plaintiff and Class Counsel**

The competing motions of the Barocios and Erodiades boil down to one issue: which one of them suffered the greatest financial loss as a result of Yingli's alleged fraud. The Barocios initially claimed $288,583.45 in losses, whereas Erodiades claimed $363,753 in losses. (Barocios Mot. Ex. 3; Erodiades Mot. Ex. 2.) The Barocios subsequently revised their claimed losses to $371,648.66. (Barocios Opp'n at 2.) Erodiades objects to the revised number on the grounds that it is untimely and on the grounds that Noe Barocio did not execute the certification attesting to her purchase of Yingli stock. (Erodiades Reply at 2–4.) The Court disagrees with Erodiades' objections and finds that the Barocios' revised number allows for a true comparison of the financial losses suffered by the movants. Because the revised number shows that the Barocios suffered the greatest financial loss, they should serve as lead plaintiffs.

In a private securities fraud class action, any member of the class may move to serve as lead plaintiff within 60 days after notice of the action is published. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The court must then "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). There is a rebuttal presumption that the "most adequate plaintiff" is the movant that (1) has the largest financial interest in the relief sought by the class, and (2) otherwise

satisfies the requirements of Rule 23. *Id.* § 78u-4(a)(3)(B)(iii)(I). Once a lead plaintiff is selected, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v).

### 1. Timely Motion

The Private Securities Litigation Reform Act requires all motions to serve as lead plaintiff to be filed within 60 days after notice of the action is disseminated to the class. *Id.* § 78u-4(a)(3)(A)(i)(II); *see Zhu*, 682 F. Supp. 2d at 1053 ("'The plain language of the statutes precludes consideration of a financial loss asserted . . . *after* the sixty (60) day window has closed.'" (citation omitted)). Plaintiff here published notice of the action on May 28, 2015. (Barocios Mot. Ex. 1.) Both the Barocios and Erodiades filed their motions on July 27, 2015. Thus, both motions are timely.

### 2. Largest Financial Interest

The PSLRA does not specify how to assess which movant has the "largest financial interest in the relief sought by the class," and the Ninth Circuit has left it to the district courts to "select accounting methods that are both rational and consistently applied" in making this determination. *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). District courts "have typically considered the 'Olsten-Lax' factors to determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) and *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005); *Mulligan*, 2013 WL 3354420, at *5–6.

The first factor favors the Barocios, who purchased 195,150 shares during the class period compared to Erodiades' purchase of 160,000 shares. The second factor,

however, favors Erodiades, who purchased 160,000 net shares compared to the Barocios' purchase of 132,620 net shares. The third factor also favors Erodiades, whose net expenditure on shares is $543,247.05 compared to the Barocios' $520,183.06.

However, "[o]f the Olsten-Lax factors, courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss." *Richardson*, 2007 WL 1129344, at *4; *see also Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses."). The Barocios claimed in their moving papers to have "lost over $288,000 in connection with their purchases of [Yingli] stock." (Barocios Mot. at 4.) The Barocios calculated this loss by using $1.7463 as Yingli's post-disclosure share price. (Mot. to Strike at 2, ECF No. 48.) Erodiades, on the other hand, calculated losses of $363,753.17 based on a post-disclosure share price of $1.1218. (Erodiades Mot. Ex. 2.) In opposition to Erodiades' motion, the Barocios revised their estimated losses to $371,648.66 by using the same post-disclosure share price that Erodiades used (i.e., $1.1218). Under the old calculation, Erodiades suffered the larger financial loss; under the new calculation, the Barocios suffered the larger financial loss.

The Court finds that it is appropriate to use the Barocios' new loss calculation as the comparator. The financial losses suffered in a securities fraud action are based on the drop in share value that occurs after the company discloses (or the market otherwise learns of) the fraud. If the shareholder chooses not to sell his or her shares after the disclosure, the total amount lost in these "held shares" will constantly fluctuate based on an ever-changing share price. Thus, the only way to make a true apples-to-apples comparison of the "held losses" suffered by each movant is to calculate those losses using the same post-disclosure share price. *See In re Cavanaugh*, 306 F.3d at 730 n.4 (the accounting method used to compare financial interest must be "consistently applied"). Because the Barocios' new calculation uses

the same post-disclosure share price as Erodiades used in his calculation, the Barocios' new calculation is the proper one for the Court to consider.[3]

Erodiades argues that the Court cannot consider the Barocios' new loss calculation because it was presented more than sixty days after notice of the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). However, all of the cases cited by Erodiades in support of this argument involve the submission of new *transactions* to the court after the sixty-day deadline. *Mulligan*, 2013 WL 3354420, at *8 (submitting additional transactions in reply based on a different class period); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d at 818 (submitting additional transactions based on a larger class period asserted in an amended complaint); *Darwin v. Taylor*, No. 12-CV-01038-CMA-CBS, 2012 WL 5250400, at *6 (D. Colo. Oct. 23, 2012) (noting that the movant "present[ed] numerous *new* trades that appeared nowhere in his moving papers"). That is not the case here. The Barocios simply used a different post-disclosure stock price to calculate losses from the exact same transactions that were submitted to the Court in a timely manner.

Erodiades also argues that the Court cannot consider Noe Barocio's losses because he did not sign the certification that was submitted to the Court on his behalf as required by § 78u-4(a)(2)(A). The Barocios respond that the certification was indeed signed, just not in the precise area where one would typically expect the signature. (Mot. to Strike at 1, ECF No. 48.) They point to a mark in the middle of the page that they contend is Noe Barocio's signature. (*Id.*) The Court agrees that the precise location of the signature is immaterial, *see In re MERV Properties, LLC*, No.

---

[3] Some courts use the "lookback" value as the post-disclosure share price, which is the average trading price of the share during the 90 days after the market learns of the fraud. *See* 15 U.S.C. § 78u-4(e)(1); *In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 n.22 (E.D. Va. 2000). Erodiades claims in his moving papers that $1.1218 is the lookback value of Yingli's stock. It is unclear how Erodiades reached this conclusion given that they filed their motion less than 90 days after Yingli's disclosure. Regardless, the Court need not determine the "correct" post-disclosure share price to appoint a lead plaintiff; all that matters is that the movants each use the same number so that the Court can compare the alleged losses.

11-52814, 2015 WL 2105884, at *7 n.6 (Bankr. E.D. Ky. May 4, 2015), and based on counsel's representation that the mark is indeed Noe Barocio's signature, the Court finds that Noe Barocio signed the certification as required by the PSLRA.

In sum, because the fourth *Olston-Lax* factor favors the Barocios, and because of the near-determinative weight that is afforded this factor, the Court finds that the Barocios have the largest financial interest in the relief sought by the class.

### 3. Rule 23 Requirements

Once the court has determined which plaintiff has the largest financial interest, "[i]t must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *In re Cavanaugh*, 306 F.3d at 730 (emphasis in original). "This analysis need not be as complete as would a similar determination for the purpose of class certification. At the lead plaintiff stage of the litigation, 'the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *eSpeed*, 232 F.R.D. at 102 (citation and footnotes omitted); *see also Zhu*, 682 F. Supp. 2d at 1053; *Richardson*, 2007 WL 1129344, at *4. "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *In re Cavanaugh*, 306 F.3d at 730.

"[Rule 23(a)'s] adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Richardson*, 2007 WL 1129344, at *4 (citing Fed. R. Civ. P. 23(a)(4); *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508

(9th Cir. 1992)).

The Barocios' have made a prima facie showing that they meet Rule 23(a)'s typicality and adequacy requirements. The Barocios, like all other members of the class, purchased thousands of Yingli shares during the class period, and are now stuck with those shares at a fraction of the purchase value. The Barocios also made multiple purchases of shares during the entire class period, as opposed to just one or two lump sum purchases. There is no evidence that the Barocios have any conflicts with the class or would be otherwise unable to effectively represent the class. None of the other movants argue that the Barocios do not meet these requirements. Thus, the Court designates the Barocios as the lead plaintiffs.

### 4. Lead Counsel

Once a lead plaintiff is selected, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). The Barocios have selected The Rosen Law Firm to represent them and the class in this action. Having reviewed the firm's résumé, the Court is satisfied that the firm will effectively represent the interests of the class. *See also Richardson*, 2007 WL 1129344, at *6 (noting that The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions); *Zhu*, 682 F. Supp. 2d at 1056 ("The Rosen Law Firm appears to have the requisite ability and expertise to prosecute and manage [securities class actions] effectively.").

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motions to Consolidate, **GRANTS** Movants Noe and Salvador Barocio's Motion for Appointment of Lead Plaintiff and Class Counsel, and **DENIES** all other Motions for Appointment of Lead Plaintiff and Class Counsel. (ECF Nos. 9, 16, 17.) It is hereby **ORDERED** that this case is consolidated with *Bhimsain Mangla v. Yingli Green Energy Holding Co. Ltd.*, Case No. 2:15-cv-04600-ODW, for all purposes including trial. This case is designated as the lead case. All documents related to either case that need to be filed

with the Court should be filed in **only the lead case**. The caption page of all such documents filed with the Court shall be identical in form as the caption on this Order.

It is further **ORDERED** that Noe Barocio and Salvador Barocio are designated as lead plaintiffs in the consolidated actions, and that The Rosen Law Firm, P.A. is designated as lead class counsel, subject to the Court's granting of a Motion for Class Certification.

**IT IS SO ORDERED.**

October 6, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**