**O**

# United States District Court
# Central District of California

| | |
|---|---|
| KEVIN T. KNOX; NOE BAROCIO; SALVADOR BAROCIO; CINDY CONYBEAR, each individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>YINGLI GREEN ENERGY HOLDING COMPANY LIMITED; LIANSHENG MIAO; YIYU WANG; and ZONGWEI "BRIAN" LI,<br><br>     Defendants. | Case № 2:15-cv-04003-ODW(MRWx)<br>[c/w: 2:15-cv-04600-ODW (MRWx)]<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [108] AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE [110]** |

## I. INTRODUCTION

This is a putative class action for securities fraud under sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Plaintiffs Noe Barocio, Salvador Barocio, and Cindy Conybear allege that Defendant Yingli Green Energy Holding Company Limited ("Yingli"), a company that sells solar energy products, defrauded its investors by making false or misleading public statements about (1) the company's involvement in a government subsidy program, and (2) the collectability of an outstanding debt. Yingli now moves to dismiss Plaintiffs' Consolidated Third Amended Complaint and moves to strike the declaration of Harris L. Devor, CPA. (ECF Nos. 108, 110.) For

the reasons discussed below, the Court **GRANTS** the Motion to Dismiss without leave to amend and **DENIES AS MOOT** the Motion to Strike.

## II. BACKGROUND

The Court has recited and analyzed the facts underlying this lawsuit at length in prior orders, and thus the Court now recites only the background facts and any new facts relevant to the disposition of this Motion. Yingli is a publicly traded company that manufactures and sells solar energy products. (Consol. Third Am. Compl. ("TAC") ¶¶ 2, 27, ECF No. 106.) Prior to 2010, Yingli sold its products mainly to European companies. (*Id.* ¶¶ 4, 36.) Beginning in 2011, however, Yingli's sales gradually shifted from Europe to China. (*Id.* ¶¶ 5–7, 39–43.) This shift was due in part to a solar energy subsidy program offered by the Chinese government called "Golden Sun." (*Id.* ¶¶ 8, 47.)

### A. Golden Sun Program

Under the Golden Sun Program, the Chinese government subsidized up to 70% of the cost of approved solar power projects in China. (*Id.* ¶ 48.) Yingli benefitted from the program in two ways. First, the developers for one-quarter of all Golden Sun projects purchased photovoltaic panels from Yingli. (*Id.* ¶¶ 9, 53, 54.) Second, Yingli received subsidies for its own solar power projects. (*Id.* ¶ 54.)

Between December 2, 2010, and March 4, 2013, Yingli issued statements touting its involvement in—and attributing its success in the Chinese market to—the Golden Sun Program. (*Id.* ¶¶ 56–71.) According to Plaintiffs, these cheery statements were misleading because Yingli did not disclose the risk that widespread fraud in the program could lead to its termination. (*Id.* ¶¶ 72, 81–82.) This fraud included subsidy recipients (1) overstating project costs in subsidy applications, (2) deliberately delaying project construction to take advantage of falling project costs, and (3) using materials of lower quality than what they originally agreed to use. (*See id.* ¶¶ 86–93.) For example, in late 2011 or early 2012, Yingli applied for a Golden Sun subsidy for a "large and relatively expensive project" when the cost of producing solar energy was

RMB 13 per watt. (*Id.*) After receiving the subsidy, Yingli "deliberately delay[ed] construction" on the project until this cost had fallen to RMB 7–8 per watt. (*Id.*) This resulted in Yingli "earn[ing] a fraudulent profit of RMB 5–6 per watt." (*Id.*) According to a former employee of a Yingli subsidiary (FE3),[1] delaying construction in this manner was a "deliberate policy" used by Yingli and "most companies" receiving Golden Sun subsidies. (*Id.* ¶¶ 91–93.) FE3 characterizes this policy as an "open secret" in the Chinese solar industry. (*Id.* ¶ 93.) Between March 18 and March 22, 2013, a series of news articles and industry experts predicted that the Chinese government would discontinue the Golden Sun Program. (*Id.* ¶¶ 73, 75, 76.) These articles and predictions allegedly caused Yingli's stock price to fall 6.9% on March 18 and 22.2% on March 25. (*Id.* ¶¶ 73, 77.)

**B.     Yingli's Doubtful Accounts**

Plaintiffs also allege that Yingli committed accounting fraud. Specifically, Plaintiffs allege that Yingli should have disclosed in its 2013 20-F Annual Report problems collecting a RMB 75.3 million debt owed by Shanghai Chaori Solar Energy Science & Technology Co. Ltd. ("Chaori"). (*Id.* ¶¶ 16, 96.) According to Plaintiffs, Yingli waited until its Q4 2014 Report and 2014 20-F Annual report to disclose the collection issue. Specifically, in its Q4 2014 Report, Yingli disclosed that it had recorded a bad debt provision of RMB 90.5 million. (*Id.* ¶ 145; Def.'s Req. for Judicial Notice ("RJN"), Ex. D, ECF No. 109.) Although this report did not disclose the debtors' identities, Plaintiffs believe that this bad debt included the Chaori receivable because Chaori received court approval for its bankruptcy plan during that financial quarter. (TAC ¶ 146.) On the day Yingli released this report (March 25, 2015), Yingli's stock price dropped 15%. (*Id.* ¶ 147.) On May 15, 2015, Yingli filed its 2014 20-F Annual Report, wherein it disclosed that it was writing off RMB 205.9 million in overdue accounts receivable. (*Id.* ¶¶ 148, 149; RJN, Ex. E.) Plaintiffs

---

[1] FE3's responsibilities at Yingli were "to grow Yingli's market share in China, chiefly through the Golden Sun program, to develop and systematize Yingli's products, to collect industry resources and to manage construction projects." (TAC ¶ 35.)

3

allege that "[a]pproximately RMB 60 million of this write off arose from the Chaori Receivable." (TAC ¶ 149.) The next trading day, Yingli's stock price dropped 12.4%. (*Id.* ¶ 150.) The following day, Yingli's stock price fell a further 37%. (*Id.*)

**C. Procedural History**

This Court has twice dismissed Plaintiffs' complaint for failure to comply with the relevant pleading requirements. *See Knox v. Yingli Green Energy Holding Co. Ltd.*, No. 215CV04003ODWMRWX, 2016 WL 6609210 (C.D. Cal. May 10, 2016); *Knox v. Yingli Green Energy Holding Co. Ltd.*, No. 215CV04003ODWMRWX, 2017 WL 1013293, at *1 (C.D. Cal. Mar. 15, 2017). After the most recent dismissal, Plaintiffs filed their Consolidated Third Amended Complaint, which Yingli now moves to dismiss on a variety of grounds. (ECF Nos. 106, 108.) Yingli has also moved to strike an expert declaration that Plaintiffs attached to the complaint. (ECF No. 110.) Those Motions are now before the Court for consideration.

### III. LEGAL STANDARD

The court may dismiss a complaint for failure to plead sufficient facts to support a claim for relief. Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008); *see also* 17 C.F.R. § 240.10b-5. The plaintiff must plead these elements in accordance with Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012), although the Rule 9(b) analysis is "effectively subsumed" under the stricter PSLRA analysis for at least the first two elements, *Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 85 n.5 (1st Cir. 2008).

Generally, the court should liberally grant the plaintiff leave to amend a

dismissed complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986), or where the plaintiff has previously failed to cure pleading deficiencies identified by the court, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

## IV. DISCUSSION

### A. Golden Sun Program—Scienter

Yingli argues that Plaintiffs have still not alleged facts giving rise to a "strong inference" that its executives intended to defraud its investors by touting the Golden Sun Program and not disclosing the risk that the government might terminate the program. The Court agrees.[2]

"The complaint must . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind'—that is, that he acted with intentionality or deliberate recklessness or, where the challenged act is a forward looking statement, with 'actual knowledge . . . that the statement was false or misleading.'" *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (quoting 15 U.S.C. §§ 78u-4(b)(2)(A), 78u-5(c)(1)(B)(i)) (footnotes and some citations omitted). To determine whether the plaintiff has shown a "strong inference" of scienter, the court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable—it must be

---

[2] In light of this, the Court need not address Yingli's contention that the Golden Sun theory is barred by the statute of limitations.

cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* This analysis requires the court to "assess all the allegations holistically" rather than "scrutiniz[ing] each allegation in isolation." *Id.* at 326.

Plaintiffs rely, as they previously did, on the "absurd to suggest" exception to the core operations theory to establish scienter. The core operations theory posits that "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008) (internal quotation marks omitted); *see also In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003). In *Read-Rite*, and again in *Killinger*, the Ninth Circuit held that a securities fraud plaintiff cannot "rely[] exclusively on the core operations inference to plead scienter under the PSLRA." *Killinger*, 542 F.3d at 784. The only exception is the "rare" instance where "the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786.

In ruling on Yingli's prior motion to dismiss, the Court held that Plaintiffs had not met this "demanding standard." *Knox*, 2017 WL 1013293, at *10. The key flaw in Plaintiffs' allegations was that they contained only "vague quantifiers" and "majestic generalities"—such as "widespread," "happened 'generally,'" and "was the exception, not the rule"—to show how pervasive the fraud in the program was. *Id.* Without "concrete numbers," the Court held, no meaningful inference could be drawn "about what Yingli's executives knew"—and thus failed to disclose—"regarding [the Golden Sun] fraud." *Id.*

The current iteration of the complaint fares no better. The few new allegations pleaded concerning Golden Sun still use the same vague quantifiers and generalities that the Court previously held to be insufficient: Plaintiffs allege that Yingli delayed construction on a "large and relatively expensive project"; that it was Yingli's general "policy" to delay construction after receiving subsidies; that "other companies

6

throughout the solar industry" had a similar policy; and that the existence of such policies was an "open secret" in the industry during this time. Indeed, Plaintiffs' resort to oxymoronic idioms such as "open secret" only highlights how little meaningful detail their complaint contains. Without knowing facts such as how many companies had this purported policy and how many projects this policy affected, the Court cannot conclude that the fraud was *so* pervasive throughout the *entire* solar industry that Yingli's upper management could not possibly have been ignorant of it and its potential to shutter the Golden Sun Program.[3] The Court therefore dismisses this theory. Moreover, as Plaintiffs' new allegations are of the same type that the Court previously held to be insufficient, the Court denies leave to amend. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) (affirming denial of leave to amend in a securities fraud action where "[t]he district court gave Plaintiff a detailed explanation of why his original theory . . . was deficient" but the plaintiff "nonetheless persisted in attempting to establish [liability]" through the same types of allegations).

## B. Accounting Fraud—Loss Causation

Yingli argues that Plaintiffs have not established loss causation because the corrective disclosures that they point to—the Q4 2014 Report and the 2014 20-F Annual Report—neither identify Chaori nor show that Yingli's problems collecting the Chaori debt should have been disclosed sooner. The Court agrees.[4]

"Loss causation is the causal connection between a defendant's material misrepresentation and a plaintiff's loss." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010). "Loss causation is established if the market learns of a

---

[3] Further, as Yingli points out, it is unclear how its purported policy of delaying project construction even constitutes fraud. Plaintiffs suggest that this policy violated the terms of the subsidies, which imposed tight deadlines on project completion. But tight deadlines merely *discourage* construction delays; it does not *prohibit* them. Because Plaintiffs do not show that the practice is fraudulent, it is unclear how the practice materially contributed to the Chinese government's decision to shutter the Golden Sun Program. This is yet another reason why Plaintiffs' new allegations add nothing to the scienter inquiry.

[4] In light of this, the Court need not address Yingli's contention that Plaintiffs have not adequately pleaded falsity and scienter.

7

defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a plaintiff suffers a loss as a result of the market's reaction." *Id.*; *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) ("[T]he complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses."). However, the misrepresentation need only be "one substantial cause of the investment's decline in value"; it need not be the *sole* reason. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (internal quotation marks omitted). Plaintiffs must plead loss causation with particularity under Rule 9(b). *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

Here, Yingli correctly notes that neither the Q4 2014 Report nor the 2014 20-F Annual Report identify the particular debtors whose accounts Yingli wrote off.[5] Instead, Plaintiffs appear to infer that these reports accounted for RMB 60 million of the Chaori receivable because the Chinese bankruptcy court approved Chaori's bankruptcy plan in October 2014. This is insufficient. As the Court previously noted, deciding when to recognize an outstanding account as doubtful "is an imprecise science, because the underlying accounting concept—i.e., reasonable assurance of collectability—'is a matter of judgment and estimate.'" *Knox*, 2017 WL 1013293, at *12 (quoting *In re Galileo Corp. S'holders Litig.*, 127 F. Supp. 2d 251, 265 (D. Mass. 2001)); *cf. DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("For any bad loan the time comes when the debtor's failure is so plain that the loan is written down or written off. No matter when a bank does this, someone may say that it should have acted sooner."); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) ("[T]he setting of loan loss reserves [is] based on flexible accounting concepts, which,

---

[5] Because of this, Plaintiffs' bare allegation that these two reports did in fact disclose the Chaori receivable is insufficient. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim.").

when applied, do not always (or perhaps ever) yield a single correct figure."). Thus, alleging facts tending to show the outer limit of when Yingli *should have* recognized the Chaori debt does not establish when Yingli *actually did* so.[6] And without particularized allegations showing that Yingli's Q4 2014 Report and 2014 20-F Annual Report actually recognized the Chaori account as doubtful (or wrote it off), Plaintiffs cannot show that Yingli's accounting for that debt had any causal connection to the drops in stock price that followed the release of the reports.

Moreover, and perhaps even more critically, nothing in either report revealed that Yingli should have disclosed the Chaori debt sooner. Loss causation requires that the market learn of, and react to, the company practice that the plaintiff alleges is fraudulent (although the market need not have learned that the practice was in fact fraudulent). *Metzler Inv. GMBH*, 540 F.3d at 1063–65; *Loos*, 762 F.3d at 888 (holding that financial disclosures were insufficient to establish loss causation because they "d[id] not reveal any information from which revenue accounting fraud might reasonably be inferred"); *Oracle Corp. Sec. Litig.*, 627 F.3d at 393 (rejecting the argument that the plaintiff can "prove loss causation by showing that the market reacted to the purported 'impact' of the alleged [accounting] fraud . . . rather than to the fraudulent acts themselves"). Here, the two reports did not identify Chaori and did not include any facts from which one can infer that the Chaori debt should have been disclosed earlier (if they even accounted for the debt at all). As Yingli notes, simply recognizing that an account has become uncollectible does not imply that it was uncollectible at some earlier point. Because the market could not have reacted to a fact that it did not know, Plaintiffs cannot establish loss causation.

For these reasons, the Court dismisses Plaintiffs' accounting fraud theory. In addition, the Court declines to grant leave to amend. This is the fourth iteration of the

---

[6] Indeed, Yingli's Q1 2014 report recognized a non-cash bad debt provision of RMB 76.1 million—almost exactly the amount of the Chaori debt. (RJN, Ex. C, ECF No. 109-3.) If, as Plaintiffs contend, Yingli should have recognized the Chaori debt in 2013, it is unclear why they assume that no part of the RMB 76.1 million debt write-off in Q1 2014 related to that debt.

complaint and Plaintiffs' fourth attempt to plead a viable accounting fraud theory. Even though Yingli did not previously attack this theory based on a failure to establish loss causation, the Court cannot see how Plaintiffs could cure the deficiency. Yingli's 2015 disclosures do not specifically identify Chaori as the debtor whose receivable was listed as doubtful and/or written off, and did not disclose Yingli's accounting practices with respect to the Chaori debt. An amended complaint cannot change this.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Yingli's Motion to Dismiss and **DENIES AS MOOT** Yingli's Motion to Strike. (ECF Nos. 108, 110.) The Court further **ORDERS** Plaintiffs to **SHOW CAUSE**, in writing only, no later than **August 18, 2017**, why the Court should not dismiss Defendants Liansheng Miao, Yiyu Wang, and Zongwei "Brian" Li without prejudice based on Plaintiffs' failure to serve them with the complaint within the Rule 4(m) period.

**IT IS SO ORDERED.**

August 15, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**